UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHEN PUCKOWITZ,

                Plaintiff,

      v.

THE CITY OF NEW YORK, a municipal entity;
NEW YORK CITY POLICE OFFICERS
RODRIGUEZ (Shield No. 10703), GORE (Shield
No. 12464), DORSETT (Shield No. unknown) and
SERGEANT "JOHN DOE" (Shield No.
unknown); SINGH MANJEET; and MCGUINESS
MANAGEMENT,

                Defendants.

ECF CASE

09 Civ. 6035 (PGG)

**MEMORANDUM OPINION &
ORDER**

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Stephen Puckowitz brings this action against Defendants the City of New York, New York City Police Officers Rodriguez, Gore and Dorsett, Singh Manjeet and McGuiness Management asserting claims arising from his April 3, 2008 arrest.

        Defendants the City of New York and Officers Rodriguez, Gore and Dorsett move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[1]  For the reasons set forth below, the motion to dismiss will be GRANTED.

## BACKGROUND

        On the evening of April 3, 2008, Puckowitz was traveling in a taxi driven by Singh Manjeet and "owned and/or operated" by McGuiness Management. (Cmplt. ¶¶ 13-14, 18)  At 6:56 p.m., the taxi arrived at the office of an Upper West Side psychologist. (Cmplt. ¶¶ 12-

---

[1] Defendants Manjeet and McGuiness Management were served in this action on July 8, 2009. (Dkt. Nos. 3, 4)  McGuiness Management filed its Answer on September 25, 2009. (Dkt. No. 12)  Manjeet has not yet appeared.

13) Puckowitz alleges that he "paid the cab fare using his American Express card." (Cmplt. ¶ 13)  American Express approved the 6:56 p.m. transaction under approval code 503473.  (Id.)

The Complaint avers, upon information and belief, that Manjeet "falsely reported" to the New York City Police Department that Puckowitz had not paid his fare.  (Cmplt. ¶ 14)  At 7:13 p.m., Officers Rodriguez, Gore and Dorsett "forcibly took [Puckowitz] from the psychologist's office, handcuffed him, placed him under arrest, shoved him repeatedly, and then dragged him to their squad car."  (Cmplt. ¶ 15)  The officers "refused to listen" to Puckowitz's claims that he had paid the fare in full, and Officer Rodriguez denied Puckowitz's request that he contact American Express to confirm the fare had been paid.  (Id.)  The officers "similarly refused [Puckowitz's] offer to pay the cab [fare] a second time" (id.), and ignored the psychologist's assertions that Puckowitz had paid the fare.  (Cmplt. ¶ 16)  The Complaint alleges that Officer Rodriguez "told the psychologist 'shut up' using curses and expletives, and threatened to arrest her as well."  (Id.)

Puckowitz remained in handcuffs for more than ninety minutes and was taken to the New York City Police Department's 20th Precinct, where he was placed in a cell.  (Id.)  He was released between 1:30 and 2:00 a.m. on April 4, 2008, and given a desk appearance ticket.  (Id.)

On April 29, 2008, Officer Rodriguez signed a criminal complaint against Puckowitz, alleging that he had violated New York Penal Law § 165.13, which governs "Theft of Services."  (Cmplt. ¶17)  The criminal complaint indicates that the charge is based on Manjeet's statement that Puckowitz had "refused to pay" the fare.  (Cmplt. ¶ 18)  Puckowitz claims that he was "maliciously prosecuted" and was "forced to attend court, retain an attorney,

[and] lose income by attending the court proceeding." (Cmplt. ¶ 19) The criminal case against Puckowitz was "dismissed and sealed" on May 5, 2008. (Id.)

Puckowitz filed this action on July 2, 2009. Puckowitz brings claims under 42 U.S.C. § 1983 for false arrest, malicious prosecution and excessive force. (Cmplt. ¶¶ 32-34, 38-43, 47-49) Puckowitz also brings claims under New York state law for negligence (Cmplt. ¶¶ 41-43), and assault and battery. (Cmplt. ¶¶ 50-52) Finally, Puckowitz asserts claims that the City of New York is liable under both federal law and the doctrine of respondeat superior. (Cmplt. ¶¶ 44-46, 53-58)

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)). "Dismissal for failure to state a claim is proper where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (quoting Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999)).

"When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' . . . complaint, . . . to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which

3

judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

### I. PUCKOWITZ FAILS TO STATE A CLAIM UNDER 42 U.S.C. § 1983

Puckowitz's federal claims all seek damages under 42 U.S.C. § 1983, which provides "'a method for vindicating federal rights elsewhere conferred,' including under the Constitution." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).

In order to state a claim for relief under 42 U.S.C. § 1983, "[t]he conduct at issue 'must have been committed by a person acting under color of state law' and 'must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" Cornejo, 592 F.3d at 127 (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)).

For purposes of the instant motion to dismiss, the City of New York and Officers Rodriguez, Gore and Dorsett all concede that the officers were acting "under color of state law" when they arrested Puckowitz. (Def. Br. 7)

#### A. False Arrest

"To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show that 'the defendant intentionally confined him without his consent and without justification.'" Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).

"Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff. Probable cause to arrest exists when the arresting officer has 'knowledge or reasonably trustworthy

4

information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" Escalera, 361 F.3d at 743 (quoting Weyant, 101 F.3d at 852).

"The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." Weyant, 101 F.3d at 852.

Defendants argue that Puckowitz cannot state a claim for false arrest because Officers Rodriguez, Gore and Dorsett had probable cause to arrest him based on Manjeet's complaint to police that Puckowitz had refused to pay his fare.

"When information is received from a putative victim or an eyewitness [that an individual has committed a crime], probable cause exists, unless the circumstances raise doubt as to the person's veracity." Curley v. Will. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001); see also Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity."); cf. Oliveira v. Mayer, 23 F.3d 642, 647 (2d Cir. 1994) ("Information about criminal activity provided by a single complainant can establish probable cause when that information is sufficiently reliable and corroborated. Yet, even if bystander witnesses are considered presumptively reliable, a report of a crime alone will not necessarily establish probable cause. Significantly, when information furnished by a single complainant suffices to establish probable cause, such information often comes from the victim, who has provided specific details of the crime.") (citations omitted).

The Complaint does not contain any allegations suggesting that the arresting officers had reason to doubt Manjeet's veracity. Manjeet was the putative victim and he provided "details of the crime" specific enough that the officers were aware of Puckowitz's location and of the charge that he had refused to pay the taxi fare.

Instead of suggesting that the officers had reason to doubt Manjeet's complaint, Puckowitz argues that the officers had a duty to conduct further investigation based on Puckowitz's assertions that he had paid the fare, his willingness to pay a second time, and the nearby availability of the taxi credit card terminal for inspection. (Pltf. Ltr. 3-4)

As the Second Circuit has "emphasized on more than one occasion, police officers are 'not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" Coons v. Casabella, 284 F.3d 437, 441 (2d Cir. 2002) (quoting Cerrone v. Brown, 246 F.3d 194, 198 (2d Cir. 2001)); see also Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997).

Here, the officers had probable cause to arrest Puckowitz on the basis of Manjeet's complaint. They were not obligated to investigate Puckowitz's claims of innocence, nor to pursue his suggestions for investigating the charge. See Coons, 284 F.3d at 441.

The cases cited by Puckowitz are not to the contrary, because they involve circumstances in which the police possessed information casting significant doubt on the legitimacy of the charges. In Wu v. City of New York, 934 F. Supp. 581 (S.D.N.Y. 1996), for example, the court found that the police officers did not have probable cause to arrest Wu for third degree assault, a charge which requires that the assailant have caused physical injury to another. Id. at 588-89. In that case, Wu had called in the initial complaint, claiming that he had been injured by defendant Carson. Id. at 588. Carson simultaneously called in his own

6

complaint, but stated that he had not been injured.  Id.  A witness confirmed that Carson had shoved Wu, and the ambulance attendant reported that Wu had been injured but that he had found "no trauma" in examining Carson.  Id.  Under these circumstances, the court understandably concluded that the police had not had probable cause to arrest Wu for third degree assault.

Similarly, in Middleton v. City of New York, No. 04 Civ. 1304 (JFB), 2006 WL 1720400 (E.D.N.Y. June 19, 2006), the court held that police officers lacked probable cause to arrest plaintiff where they had communicated with plaintiff over a period of months and had received information casting doubt on the complainant's veracity.  Id. at *6.

No such circumstances exist here.  Officers Rodriguez, Gore and Dorsett received a complaint from the putative victim – Manjeet – about Puckowitz's alleged crime.  The Complaint does not allege any facts that could or should have given the officers reason to doubt Manjeet's veracity, nor any evidence sufficient to trigger a duty to engage in further investigation.  Because the officers had probable cause to arrest Puckowitz, his false arrest claim must be dismissed.  See Escalera, 361 F.3d at 743.

### B. Malicious Prosecution

"To state a claim for malicious prosecution, a plaintiff must show (1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) termination of the proceeding in the plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Drummond v. Castro, 522 F. Supp. 2d 667, 677 (S.D.N.Y. 2007)

"As with a false arrest claim, the presence of probable cause is a complete defense to an action for malicious prosecution."  Id. (citing Graebe v. Falcetta, 726 F. Supp. 36, 38

7

(E.D.N.Y. 1989), aff'd, 946 F.2d 883 (2d Cir. 1991)).  However, "'even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause.'  In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996) (quoting Cox v. Cnty. of Suffolk, 780 F. Supp. 103, 108 (E.D.N.Y. 1991)).

As discussed above, Officers Rodriguez, Gore and Dorsett had probable cause to arrest Puckowitz.  The Complaint does not allege any information that came to the attention of the officers after Puckowitz's arrest that could or should have demonstrated "the groundless nature of the charges" against him, nor does plaintiff's counsel cite any such information in opposing Defendants' motion.  See Lowth, 82 F.3d at 571.  Because "the presence of probable cause is a complete defense to an action for malicious prosecution," Puckowitz's malicious prosecution claim must be dismissed.  See Drummond, 522 F. Supp. 2d at 677.

Even assuming, arguendo, that the officers had not had probable cause to arrest Puckowitz for theft of services, he has not stated a claim for malicious prosecution, because he has failed to allege the initiation of a criminal proceeding against him.

"Criminal proceedings are considered to be initiated 'only after an arraignment or indictment or some other 'evaluation by a neutral body that the charges [were] warranted.''" Garrett v. Port Auth., No. 04 Civ. 7368 (DC), 2006 WL 2266298, at *7 (S.D.N.Y. Aug. 7, 2006) (quoting Silver v. Kuehbeck, No. 05 Civ. 35 (RPP), 2005 WL 2990642, at *5 (S.D.N.Y. Nov. 7, 2005) (quoting Stile v. City of New York, 172 A.D.2d 743, 744 (2d Dep't 1992))).

"[A] charge and a warrantless arrest – concluding with the issuance of the desk appearance ticket – may be a sufficient deprivation of liberty to support a claim for false arrest,

8

but do not amount to a prosecution and cannot alone support a claim for malicious prosecution, which typically implicates a post-arraignment deprivation of liberty or at least an arrest pursuant to a warrant." Katzev v. Newman, No. 96 CIV 9138 (BSJ), 2000 WL 23229, at *4 (S.D.N.Y. Jan. 12, 2000).

Here, Puckowitz was issued a desk appearance ticket and Officer Rodriguez signed a criminal complaint against him, which ultimately required Puckowitz to appear in court. (Cmplt. ¶¶ 16-17, 19)  Puckowitz argues – without citation to any supporting legal authority – that the signing of the criminal complaint is sufficient to constitute the initiation of a criminal proceeding.  (Pltf. Ltr. 4-5)  However, the Complaint does not allege any "'evaluation by a neutral body that the charges [were] warranted.'"  See Garrett, 2006 WL 2266298, at *7 (quoting Silver, 2005 WL 2990642, at *5 (quoting Stile, 172 A.D.2d at 744)).  Absent such an evaluation, the initial steps taken by the New York City Police Department to bring charges against Puckowitz – the issuance of the desk appearance ticket and the signing of the criminal complaint – do not constitute the initiation of criminal proceedings and cannot form the basis of a claim for malicious prosecution.  See Garrett, 2006 WL 2266298, at *7 (holding that "a court appearance pursuant to [a] summons alone cannot give rise to a malicious prosecution claim," because "the initiation of the legal process in the form of either an arrest warrant or an arraignment is a prerequisite to a malicious prosecution claim").

  **C.** **Puckowitz Has Abandoned His Claims
for Excessive Force and Municipal Liability**

Puckowitz asserts claims for excessive force and municipal liability under 42 U.S.C. § 1983.  Defendants argue that he has failed to state a claim as to these causes of action. (Def. Br. 13-15, 19-22)   Puckowitz presents no factual or legal argument in response. Accordingly, these claims have been abandoned and will be dismissed.  See, e.g., Brandon v.

9

City of New York, No. 07 Civ. 8789 (LAP), 2010 WL 1375207, at *4 (S.D.N.Y. Mar. 30, 2010) (dismissing claims as abandoned where plaintiff "did not raise any arguments opposing Defendants' motion regarding these two claims"); Bonilla v. Smithfield Assoc. LLC, 09 Civ. 1549 (DC), 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (dismissing claims as abandoned where plaintiff "fails to respond" to defendants' arguments on a motion to dismiss); Thomas v. Atl. Express Corp., 07 Civ.1978 (SCR), 2009 WL 856993, at *2 (S.D.N.Y. Mar. 31, 2009) (same); Burchette v. Abercrombie & Fitch Stores, Inc., 08 Civ. 8786 (RMB), 2009 WL 856682, at *9 (S.D.N.Y. Mar. 30, 2009) (same).

## II. THIS COURT DECLINES TO EXERCISE JURISDICTION OVER PUCKOWITZ'S PENDENT STATE LAW CLAIMS

Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. Schaefer v. Town of Victor, 457 F.3d 188, 210 (2d Cir. 2006) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "When all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice." Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 103 (2d Cir. 1998) (citing Carnegie-Mellon Univ., 484 U.S. at 350). There is no reason to deviate from this rule here. Accordingly, the Court declines to exercise supplementary jurisdiction and dismisses Puckowitz's remaining pendent state law claims.

## CONCLUSION

For the reasons stated above, the motion to dismiss filed by the City of New York and Officers Rodriguez, Gore, and Dorsett is GRANTED. The Clerk of the Court is directed to terminate the motion (Docket No. 19)

Dated: New York, New York
       September 16, 2010

SO ORDERED.

Paul G. Gardephe
United States District Judge